Iris Ramsey BREWER et vir, Appellants,

v.

OTIS ELEVATOR COMPANY, Appellee.

No. 15088.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Dec. 21, 1967.

Rehearing Denied Jan. 11, 1968.

David J. Nagle, Houston, for appellants.

David Bland, Barrow, Bland & Rehmet, Houston, of counsel, for appellee.

COLEMAN, Justice.

This is a suit for damages for personal injuries sustained by Iris Ramsey Brewer

when she slipped and fell in an elevator. The principal question involved on appeal concerns the duty of care owed by Otis to the public using the elevators by reason of the fact that Otis exercised some degree of joint control over the elevators.

The suit named as defendants Prudential Insurance Company of America, the owner of the elevator and the building in which it was installed; American Building Maintenance Company, Inc., who had a contract with Prudential to keep the building clean; and Otis Elevator Company, who had a maintenance contract with Prudential to keep the elevators in proper repair. The case was tried to a jury. The trial court instructed a verdict in favor of American. After the jury returned its verdict, but before judgment was entered, the plaintiffs informed the court that the cause had been settled as to Prudential, and thereafter filed among the papers in the cause a settlement agreement reflecting a settlement for the sum of $3,000.00 and an assignment from Prudential to plaintiffs of its rights to indemnity or contribution from Otis. The trial court entered judgment that plaintiffs take nothing, denied Prudential indemnity and contribution, and assessed costs against the plaintiffs. No motion for new trial was filed. The plaintiffs have not appealed the judgment insofar as it decrees that they take nothing against Prudential and American.

■ Since no motion for new trial was filed plaintiffs are confined on this appeal to their points complaining of the refusal of the trial court to grant their motion for judgment. Abbott v. Earl Hayes Chevrolet Company, 384 S.W.2d 782 (Tex.Civ. App., Tyler, 1964).

In their motion for judgment appellants requested the court to enter judgment dismissing American Building Maintenance Company on all actions and cross-actions, and to further enter judgment for plaintiffs and against Otis Elevator Company for one-half of the damages as found by the jury. Plaintiffs further moved the court to find that Prudential Insurance Company is entitled to indemnity from Otis Elevator Company for the sum of $3,000.-00, paid by Prudential to plaintiffs in settlement. The motion asked that costs be taxed against Otis and that the judgment be substantially in the form attached to the motion. In the attached form there is a paragraph by which the court ordered, adjudged and decreed that plaintiffs recover nothing against the Prudential Insurance Company of America.

Of the issues submitted to the jury only Special Issues 10, 11, 12, 20, and the definition of proximate cause as submitted in connection with Special Issue No. 3, are material to this appeal. They read:

"SPECIAL ISSUE No. 10—Do you find from a preponderance of the evidence that on the date and on the occasion in question the lighting in Elevator No. 3 was not as bright as that which would have been supplied in the exercise of high degree of care?

To which the Jury answered, 'It was not as bright.'

"SPECIAL ISSUE No. 11—Do you find from a preponderance of the evidence that the failure to furnish light as bright as that which would have been furnished in the exercise of high degree of care, if you have so found, was a proximate cause of the Plaintiff's fall?

"By the term 'proximate cause' as used in the foregoing is meant the same proximate cause as that defined in connection with Special Issue No. 3.

To which the Jury answered, 'We do.'

"SPECIAL ISSUE No. 12—Do you find from a preponderance of the evidence that on the date and on the occa-

sion in question the lighting in Elevator No. 3 was not as bright as that which would have been supplied in the exercise of ordinary care?

To which the Jury answered, 'It was as bright.'

"SPECIAL ISSUE No. 20—Do you find from a preponderance of the evidence that the conduct of Dolly Fulsom was the sole proximate cause of the Plaintiff's fall?

"By the term 'sole proximate cause' as used in this charge is meant the only proximate cause and none other. There can be only one sole proximate cause of an event. By the term sole proximate cause as used in the foregoing Special Issue is meant the same proximate cause as that defined in connection with Special Issue No. 5.

To which the Jury answered, 'We do.'"

"By the term 'proximate cause' as used in the foregoing issue, is meant a cause which in a natural and continuous sequence, produces an event and without which the event would not have occurred; and to be a proximate cause of an event it should be reasonably anticipated and foreseen by a very cautious and prudent person exercising a high degree of care that the event or some similar event would occur as a natural and probable consequence. There may be more than one proximate cause of an event."

The evidence shows that Miss Dolly Fulsom spilled some chili in one of the elevators. She sent word of the incident to the employee of the building in control of the elevators, which were automatic and had no operators. Before the elevator could be taken out of service for cleaning, Mrs. Brewer attempted to enter it, and slipped on the chili and fell.

It is appellants' contention that by virtue of the contract of maintenance between Otis and Prudential, as well as by the actions of its employees, Otis has undertaken the active management and control of the elevators, and, therefore, has the same duty of exercising a high degree of care for the well-being and safety of passenger-invitees as has Prudential, the owner of the premises. Appellants alleged that Otis had joint control of the elevators with Prudential. They rely strongly on Bond v. Otis Elevator Company, 388 S.W.2d 681 (Tex. 1965), wherein the Supreme Court held that the doctrine of res ipsa loquitur applied as against both the Adolphus Tower and Otis Elevator where an elevator went into a free fall injuring a passenger, the evidence conclusively showing joint control of the elevator. In its opinion the Court said:

"We think that the evidence conclusively shows that the elevator was under the joint control of Adolphus Tower and Otis Elevator. A mere reading of that part of the contract quoted above shows this. Otis Elevator says that the contract places the exclusive control in Adolphus Tower. It points to the last sentence copied above from the contract wherein the agreement states that Otis did not assume possession or management of the equipment, but such remained in the owner, that is, Adolphus Tower. It is true that the Adolphus Tower retained possession and management of the elevators by that contract, but with the understanding that Otis was to examine, lubricate, adjust and if in *its judgment* conditions warrant, it was to repair or replace all necessary equipment. In other words, what maintenance was required depended upon the judgment of Otis, not that of Adolphus Tower. It would be difficult to imagine a relationship between two parties with reference to certain equipment where joint control is more conclusively shown. The petitioner pleaded joint control and under this evidence we think the trial court was correct in its necessary holding, in support of its judgment, that both parties were in joint control of the elevator in question."

The contract between Prudential and Otis is the same as the one quoted in Bond v. Otis Elevator Company. We particularly note that the contract obligated Otis to use all reasonable care to maintain the elevator equipment in proper and safe operating condition. Otis agreed to "examine, lubricate, adjust, and if in our judgment, conditions warrant, repair or replace all accessory equipment (by us) with exceptions as stated hereinafter."

The exceptions, not quoted in Bond, read:

"We shall not be required to make other safety tests nor to install new attachments on the elevators whether or not recommended or directed by insurance companies or by governmental authorities, nor to make any replacements with parts of a different design. It is agreed that we are not required to make renewals or repairs necessitated by reason of negligence or misuse of the equipment or by reason of any other cause beyond our control except ordinary wear and tear.

"We assume no responsibility for the following items of elevator equipment which are not included in this contract:

"Refinishing, repairing or replacement of car enclosure, hoistway enclosure, hoistway doors, door frames and sills."

■ As the Supreme Court pointed out in Bond, what maintenance was required depended upon the judgment of Otis. However, Otis, by its contract, undertook to use reasonable care to maintain the elevators in good mechanical condition. It was not required to make safety tests for adequacy of the light in the elevators, to install new or different light fixtures in the elevators, or to replace the light fixtures with which the elevators were equipped with fixtures of a different design. Prudential retained possession and management of the elevators, but Otis had joint control insofar as necessary to the performance of the contract. The contract does not place on Otis responsibility for the design of the lighting system in the elevator. The case was not tried on the theory of breach of express or implied warranties on the part of Otis as the manufacturer or seller of the equipment, nor has that theory been urged on this appeal.

■ Appellants' position that Otis has a duty to passengers using the elevators to exercise a high degree of care for their safety, rather than ordinary care, is not sound. The duty to exercise the high degree of care required of Common Carriers is placed on those furnishing elevators for the convenience and use of their invitees. Farmers' & Mechanics' Nat. Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120 (1911); Mattox v. C. R. Anthony Company, 326 S.W.2d 740 (Tex.Civ.App., Beaumont, 1959, ref., n. r. e.). The duty of the agent of the operator having control of the elevators for the purpose of maintenance is to exercise ordinary care to maintain them in a condition of reasonable safety for use. Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517 (1922); Hunter-Hayes Elevator Company v. Williams, 402 S.W.2d 280 (Tex.Civ.App., Ft. Worth, 1966, ref., n. r. e.); Otis Elevator Company v. Jackson, 325 F.2d 260 (U.S.Ct. of App., 5th Cir.).

The jury made no findings of fact which would have authorized the trial court to enter a judgment in favor of the Brewers against Otis Elevator Company.

Under the construction which we have placed on the contract, we cannot say as a matter of law that Otis breached a duty which it owed to Prudential and, since there are no jury findings of such a breach of duty, the trial court did not err in refusing to allow Prudential either contribution or indemnity against Otis.

The judgment of the Trial Court is affirmed, Associate Justice Peden not participating.